**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **JAMAL GROSS** ) | |
|     **Plaintiff,** ) | |
| **vs.** ) | No.  3:11-CV-2023-M-BH |
| ) | |
| **UNITED STATES DEPT. OF** ) | |
| **JUSTICE, et al.,** ) | |
|     **Defendants.** ) | **Referred for Pretrial Management** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case has been automatically referred for pretrial management.  Based on the relevant filings and applicable law, all claims against the United States, the federal agencies, Warden Cruz, Unit Manager Anthony, and Case Manager Rhodes, and the gross negligence and medical malpractice claims against Dr. Bret Downing, should be dismissed. The delayed medical care claim against Downing should proceed.

**I.  BACKGROUND**

On August 15, 2011, Plaintiff Jamal Gross (Plaintiff) filed this action against the United States Department of Justice (DOJ), the Federal Bureau of Prisons (BOP), and numerous BOP employees at three different prison units in three different states, including the Federal Correctional Institute at Seagoville, Texas (FCI-Seagoville), alleging violations of his constitutional rights. (*See* Comp. (doc. 2).)  On November 15, 2011, he filed an amended complaint specifically invoking *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  (*See* doc. 10.)  The claims against BOP employees in other states were transferred to the appropriate districts on November 18, 2011.  (*See* doc. 16.)

Plaintiff filed a second amended complaint on February 13, 2012, and answers to a Magistrate Judge's Questionnaire (MJQ Ans.) on April 17, 2012. (*See* Am. Comp. (doc. 24); MJQ

Ans. (doc. 30).) These filings clarify that his claims against the DOJ, BOP and FCI-Seagoville employees arise under *Bivens,* internal BOP directives regarding classification of inmates, and the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2670 *et seq.* [1] (*See id.*; doc. 30 at 1, 5, 6.) Plaintiff claims that the defendants improperly classified him while he was incarcerated in the BOP, that he was housed at FCI-Seogoville based on the improper classification, that as a result he was attacked and injured by another inmate at that facility on August 13, 2009, that the officers at FCI-Seagoville failed to secure his safety, and that he received inadequate medical care for the resulting injuries to his teeth and mouth. *Id*. He seeks monetary damages. (*See* doc. 30 at 7.)

## II. PRELIMINARY SCREENING

Plaintiff is a former federal inmate who has been permitted to proceed *in forma pauperis*. Because he has been granted permission to proceed *in forma pauperis*, his complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2). That section provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which

---

[1] The grievance forms attached to Plaintiff's initial complaint make reference to the FTCA. (*See* Comp. (doc. 2) at 18-19.) In his amended complaint, he asserts causes of action for medical malpractice and gross negligence. (*See* Am. Comp. (doc. 24) at 3,4.) In his answers to questions about his intent to assert an FTCA claim against the United States, Plaintiff initially states that he does not intend to sue the United States under the FTCA, but then later states that he has exhausted his remedies under the FTCA and that he does seek to sue the United States under the FTCA based on the actions of three government employees. (*See* MJQ Ans. (doc. 30) at 2-4.) In an abundance of caution, his conflicting statements are construed as a claim against the United States under the FTCA.

relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### III. STATUTE OF LIMITATIONS

Courts "may raise the defense of limitations *sua sponte*." *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). "[W]here it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed" under 28 U.S.C. § 1915(e)(2)(B). *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993); *accord*, *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006).

Federal courts look to the law of the forum state to determine the length of the statute of limitations applicable in *Bivens* cases. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Pena v. United States*, 157 F.3d 984, 987 (5th Cir. 1998) (the general statute of limitations governing personal injuries in the forum state provides the applicable limitations period for *Bivens* claims). The general statute of limitations governing personal injuries in the forum state provides the applicable limitations period. *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010). Texas has a two-year statute of limitations for personal injury claims, so Plaintiff had two years from the date his claims accrued to file suit. *Id.*

While state law determines the length of the *Bivens* limitations period, federal law determines the accrual date. *Wallace*, 549 U.S. at 388; *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008). Generally, a claim accrues when the plaintiff has "a complete and present cause of action", or "when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citation and internal quotation marks omitted).

3

> "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" A plaintiff's awareness encompasses two elements: "(1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim. Actual knowledge is not required "if the circumstances would lead a reasonable person to investigate further."

*Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (citations omitted); *Walker*, 550 F.3d at 414.

Here, the assault that forms the basis of the majority of Plaintiff's claims occurred on August 13, 2009. Because he knew the factual basis for the claims based on the assault on the date that it occurred, those claims accrued on that date. He did not file his complaint until August 15, 2011,[2] however, so the claims based on the assault are time-barred in the absence of equitable tolling.[3]

The applicable limitations period may be equitably tolled in appropriate circumstances. *See Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). "Because the Texas statute of limitations is borrowed in § 1983 cases, Texas' equitable tolling principles also control." *Id.* "[W]hen state statutes of limitation are borrowed, state tolling principles are to be the 'primary guide' of the federal court. The federal court may disregard the state tolling rule only if it is inconsistent with

---

[2] Under the prison mailbox rule, an action under 42 U.S.C. § 1983 is deemed filed when the prisoner delivers the pleadings to prison authorities for mailing to the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir.1995). Because Plaintiff's complaint shows that he was no longer in custody when he mailed his complaint on August 12, 2011, the prison mailbox rule does not apply to him, and his complaint is deemed filed when received by the Clerk's Office. *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (discussing rationale for application of mailbox rule to *pro se* prisoners based on circumstances outside of their control); *Allen v. U.S.*, 2012 WL 928726, *2 n. 2 (N.D. Ga. Jan. 27, 2012) (declining to apply mailbox rule where the movant was not incarcerated at the time he filed his motion to vacate sentence).

[3] Plaintiff's cause of action against Downing accrued, and the limitations period began to run, when he knew or had reason to know of the injury that is the basis of his action. *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). Because Plaintiff alleges that Downing delayed providing him care after the assault and did not provide adequate care for two more months, the delayed care claim is not time-barred.

4

federal policy." *See FDIC v. Dawson*, 4 F.3d 1303, 1309 (5th Cir. 1993) (citations omitted). The Fifth Circuit has stated that "[t]he doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 19956). Federal law requires that litigants diligently pursue their actions before equitable tolling becomes available, however. *See Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999); *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)("equity is not intended for those who sleep on their rights").

Here, Plaintiff has not shown that he diligently pursued his claims against the defendants such that equitable tolling is warranted for the claims based on the assault. He provides no explanation for the delay in filing his lawsuit and nothing to show that he was prevented from timely filing. There appears to be no basis for equitable tolling under Texas or federal law. "[E]quity is not intended for those who sleep on their rights." *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989). Because he mailed his complaint one day before the limitations period expired, however, the Court also considers his claims on the merits in an abundance of caution. *See Darby v. Dallas County Sheriff*, 2007 WL 2241751 (N.D. Tex. Aug, 3., 2007) (noting that the statute of limitations is not a jurisdictional bar).

## IV. *BIVENS* CLAIMS

Plaintiff sues the defendants under *Bivens* for violations of his constitutional rights and BOP directives for inmate health and safety. (Am. Comp. (doc. 24) at 2-4; MJQ Ans. (doc. 30) 1, 5-6.)

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court. *Bivens* is "the counterpart

5

to 42 U.S.C. § 1983," and it extends the protections afforded under § 1983 to parties injured by federal actors. *Chapman v. United States*, No. 4:06-CV-0426-Y, 2006 WL 3831227, at *1 n.8 (N.D. Tex. Dec. 27, 2006); *see also Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005) (per curiam). Unless the defendants have deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States, however, a plaintiff has no viable claim under *Bivens*. *See Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) (recognizing that "[a] *Bivens* action is analogous to an action under § 1983— the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials").

### A.     United States and Agencies

To the extent that Plaintiff seeks to assert a *Bivens* action against the United States, the DOJ, or the BOP, *Bivens* only provides a remedy for victims of constitutional violations by government officers in their individual capacities. It does not provide for a cause of action against the United States. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). Nor may a *Bivens* action be brought against a federal agency. *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994); *Moore v. United States Dep't of Agriculture*, 55 F.3d 991, 995 (5th Cir. 1995). This is because the purpose of a *Bivens* action is to deter a federal officer from violating a person's constitutional rights. *Meyer*, 510 U.S. at 485; *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Because a *Bivens* action cannot be brought against the United States or a federal agency, Plaintiff has not alleged any viable *Bivens* claim against the United States, the DOJ, or the BOP.

### B.     Individuals

#### 1.     Classification Claim

Plaintiff asserts that Warden Cruz, Unit Manger Anthony, and Case Manager Rhodes

violated his constitutional rights and 18 U.S.C. § 3621 with regard to his classification. (Am. Comp. (doc. 24) at 3; MJQ Ans. (doc. 30) at 5). Plaintiff submitted a copy of his classification when he was transferred to FCI-Seagoville in April of 2009, as well as various documents concerning administrative grievances he filed regarding his classification with his original complaint. All but one of the administrative grievances are dated after the assault. (doc. 2 at 14-22, 33-35, 39-42).

A *Bivens* action must be premised upon the personal involvement of the named defendants. *See FDIC v. Meyer*, 510 U.S. 471, 485 (1994) (explaining that it "must be remembered that the purpose of *Bivens* is to deter *the officer*"); *Guerrero-Aguilar v. Ruano*, 118 Fed. App'x 832 (5th Cir. 2004) (per curiam). Under *Bivens*, an individual cannot be held liable under a theory of respondeat superior. *Ashcroft*, 129 S.Ct. at 1948. Instead, a supervisory federal employee and/or official may be held liable only where he has personal involvement in the acts that caused the deprivation of a constitutional right or if he implements or enforces a policy that causally results in a deprivation of constitutional rights. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010); *Cronn v. Buffington*, 150 F.3d 538, 544-45 (5th Cir. 1998).

Plaintiff has failed to allege personal involvement by Cruz, Anthony, or Rhodes with respect to his classification and/or his transfer to FCI Seagoville. Plaintiff has submitted a response to an administrative inquiry from Warden Cruz concerning his eligibility for early release from prison upon completion of a drug program. It explains that the legal staff at a previous prison had determined that Plaintiff was not eligible for early release based on state felonies on his record. (doc. 2 at 33). Plaintiff has also submitted a response from Case Manager Rhodes stating that Plaintiff was appropriately classified and housed as a low security inmate. (doc. 2 at 39). Plaintiff further points to a prior habeas petition he filed in federal court regarding his eligibility for early

release, after which the BOP determined that his earlier state felonies did not prevent his early release, and that he would be eligible for early release to a halfway house after he completed the drug program at FCI-Seagoville. *See Gross v. Cruz*, 3:06-cv-2355-P (N.D. Tex. July 13, 2010). This is not evidence that Cruz, Rhodes, or Anthony were personally involved in classifying Plaintiff within the BOP.[4]

Even if these defendants were personally involved in classifications or the decision to transfer Plaintiff to FCI-Seagoville, an inmate has no constitutionally protected interest in serving his sentence at a particular institution, and an inmate has no right to be transferred or not transferred from one unit to another. *Olim v. Wakinekona*, 461 U.S. 238, 249-50 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). Likewise, inmates do not have a constitutionally protected interest in their custodial classification once assigned to a unit, even where the inmate alleges that the classification was erroneous. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (a prisoner does not have a basis for a civil rights complaint simply because he disagrees with a classification decision); *see also Jennings v. BOP*, 354 Fed. App'x 60, 61 (5th Cir. Nov. 12, 2009) (affirming the district court's decision holding that a claim that a prison classification was based on erroneous determinations of a history of violence). Indeed, while Plaintiff cites to 18 U.S.C. § 3621, that statute clearly states that "[t]he Bureau may designate any available penal or correctional facility that meets minimum standard of health and

---

[4] It is unclear that there was an error in classification that resulted in Plaintiff being confined at FIC-Seagoville. While Plaintiff appears to complain that he was housed there incorrectly because of an error in classification based on his state convictions, the record reflects that he was attending a drug treatment program at FIC-Seagoville until February of 2010, which was a requirement before he was released to a halfway house. In her motion to dismiss Plaintiff's prior habeas case, Warden Cruz alleged that Plaintiff's claim regarding early release was moot because he had already been determined to be eligible for early release after he completed the first phase of a drug treatment program at FCI-Seagoville in February of 2010, notwithstanding Plaintiff's state court convictions. *See* No.3:09-cv-2355-P, docs. 9, 10. The district court agreed and dismissed the petition as moot. *Id.*, doc. 18.

habitability[.]" 18 U.S.C. § 3621(b). Plaintiff's classification claims should be dismissed.

### 2. Failure-to-Protect Claim

Plaintiff asserts that because he was improperly classified, his "health and safety" were not secured as required by BOP directives. (MJQ Ans. (doc. 30) at 5.)

While Plaintiff has no constitutionally protected interest in classification decisions, an alleged absence of reasonable safety measures to protect an inmate may provide the basis for a failure-to-protect claim. *See Luong v. Hatt*, 979 F.Supp. 481, 484-85 (N.D. Tex. 1997). To succeed with a failure-to-protect claim, a plaintiff must allege and prove that an officer had a "wanton or deliberate attitude" towards his safety. *Id*. A prison official cannot be held liable for an alleged failure to protect under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). As such, the official must be aware of facts from which one could infer that a substantial risk of harm to an inmate exists *and* he must draw the inference. *Id*.

Here, Plaintiff has failed to allege any facts to support a failure-to-protect claim. He asserts generally that the defendants failed to secure his health and safety (Am. Comp. (doc. 24) at 4), but other than the fact that he was assaulted while at FCI-Seagoville, Plaintiff has alleged no facts to support a claim that Defendants Cruz, Anthony, or Rhodes knew of an excessive risk to his safety and disregarded it. Plaintiff's failure-to-protect claims should also be dismissed.

### 3. BOP Directive Claims

Plaintiff's filings may also be liberally construed as asserting *Bivens* claims against defendants Cruz, Anthony, and Rhodes based on their alleged failure to follow BOP directives setting forth employee responsibilities with respect to inmate health and safety. (MJQ Ans. 5). An

9

alleged failure to follow prison rules and regulations does not give rise to a constitutional violation, however. *Taylor v. Howards*, 268 F.3d 1063, *1 (5th Cir. July 17, 2001), *citing Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Any *Bivens* claims based on alleged violations of these directives are therefore without merit and should also be dismissed.

### 4. Medical Care Claims

Plaintiff alleges that FCI-Seagoville employee Dr. Bret Downing provided inadequate medical care for injuries to his mouth and teeth from an attack by another inmate, and that Downing committed medical malpractice and gross negligence. (Am. Comp. (doc. 24) at 3.)

The Constitution requires humane conditions of confinement, which includes the receipt of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials violate this requirement only when (1) the deprivation is objectively and sufficiently serious such that the act or omission results in the denial of "the minimal civilized measure of life's necessities" and (2) the official had a culpable state of mind. *Id.* at 834 (citations omitted). The objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). To satisfy the second component, the officials must be deliberately indifferent "to a substantial risk of serious harm to an inmate." *Farmer*, 511 U.S. at 828. An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

This state of mind "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted). An inmate must show that

prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Mere disagreement with the level and type of medical treatment is insufficient to state a claim, however. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Failed treatment also does not constitute deliberate indifference to medical care. *Domino*, 239 F.3d at 755. A failure to provide additional treatment may show medical malpractice, but it does not show deliberate indifference because decisions to provide additional treatment are matters of medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino*, 239 F.3d at 756.

Here, Plaintiff alleges that he received inadequate and delayed care for the injuries he received when he was assaulted by a fellow inmate on August 13, 2009. He claims that on the day of the assault, Downing placed six of the teeth Plaintiff lost back into his mouth, and that Plaintiff had several infections as a result. (MJQ Ans. (doc. 30) at 6). Nearly two months later, on October 6, 2009, Downing performed surgery on Plaintiff and extracted four teeth at that time. (Comp. (doc. 2) at 25-26). Plaintiff claims he lost six permanent teeth, experienced bone loss, and needs surgery to pull an additional two teeth. (MJQ Ans. (doc. 30) at 6).

A delay in medical care is a constitutional violation only if there has been deliberate indifference that results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The Fifth Circuit has recognized circumstances where a delay in necessary surgery does not constitute deliberate indifference to a serious medical need if an inmate receives in the interim period continuous medical evaluation and treatment for his condition, and if there is no evidence that

11

the delay caused future complications. *See Kirven v. Thaler*, 428 Fed. App'x 342 , 342-43 (5th Cir. June 9, 2011); *Foreman v. Potter*, 382 Fed. App'x 370, 372 (5th Cir. June 18, 2010). It is unclear from the current record whether Plaintiff received continuous treatment for the injuries to his mouth prior to his surgery, whether the delay in his surgery caused infections, and whether he experienced any complications as a result of the alleged delay. As stated, Plaintiff's allegation that Downing delayed necessary medical care, resulting in infections and tooth and bone loss, states a plausible claim of deliberate indifference to serious medical needs that survives preliminary screening.

Plaintiff's claims of gross negligence and medical malpractice against Downing are not viable under *Bivens,* however. Deliberate indifference requires more than an assertion of negligence, gross negligence, or medical malpractice. *Farmer*, 511 U.S. at 835; *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir.1991). These claims against Downing should be dismissed.

## V. FEDERAL TORT CLAIMS ACT

Plaintiff appears to sue under the FTCA based on the conduct of government employees. (Am. Compl. (doc. 24) at 3-4; MJQ Ans. (doc. 30) at 2-4). In the FTCA, Congress waived the United States' sovereign immunity for claims arising from torts committed by federal employees. 28 U.S.C. §§ 1346(b)(1), 2671-2680; *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). To successfully sue under the FTCA, a claim must be: 1) against the United States; 2) for money damages; 3) for injury or loss of property, or personal injury or death; 4) caused by the negligent or wrongful act or omission of any employee of the federal government; 5) while acting within the scope of his or her employment; and 6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the state law where the act or omission occurred. 28 U.S.C. § 1346(b); *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994).

A.   **Individual Defendants and Agencies**

It is unclear whether Plaintiff intends to sue the individual defendants in their individual capacities as well as the federal agencies under the FTCA. (Am. Compl. at 2; MJQ Ans. 1-4). To the extent that he does seek to sue these defendants under the FTCA, the only proper defendant is the United States; a claim against a federal agency is not authorized. *See* 28 U.S.C. § 2679(a); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988). Likewise, individual defendants also cannot be sued under the FTCA in their individual capacities. *Id.* Any claims against them in their official capacities are treated as a suit against the United States. *Connor v. Matthews*, 134 F.Supp.2d 797, 799 (N.D.Tex. 2001). Plaintiff has therefore failed to state a viable claim against the agencies or individual defendants under the FTCA.

B.   **United States**

To the extent that Plaintiff seeks to sue the United States or the individual employees in their official capacities under the FTCA, he must exhaust his administrative remedies under the FTCA before filing suit. *See McNeil v. Unites States*, 508 U.S. 106, 112-13 (1993); *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995).

> Section 2675(a) of Title 28 of the United States Code provides, in pertinent part:
>
> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

Absent compliance with the statute's exhaustion requirement, a federal district court is without

13

jurisdiction to consider any claims under the FTCA. *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989).

While Plaintiff alleges that he has exhausted his FTCA administrative remedies, the evidence submitted with his original complaint that he relies upon to show exhaustion reflects that he pursued internal BOP administrative remedies. (*See* MJQ Ans 3; doc. 2 at 14-22, 33-35, 39-41). The internal BOP procedure is separate from the FTCA claims procedure, however. *See Lopez-Heredia v. University of Texas Medical Branch Hosp.*, 240 Fed. App'x 646, 647 (5t6h Cir. July 6, 2007). Because it is clear from the face of the complaint that Plaintiff has not exhausted his administrative remedies as required under § 2675(a), the Court does not have jurisdiction over any FTCA claims against the United States. *See Miller v. Stanmore*, 636 F.2d 986, 991 (5th Cir. 1981).

## VI.  RECOMMENDATION

All of Plaintiff's claims against the United States, the DOJ, the BOP, and Defendants Cruz, Anthony, and Rhodes, and the gross negligence and medical malpractice claims against Dr. Bret Downing, should be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff's delayed medical care claim against Downing should proceed.

**SIGNED this 31st day of May, 2012.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

14

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                          _____
                           IRMA CARRILLO RAMIREZ
                           UNITED STATES MAGISTRATE JUDGE